May it please the court, David Dehoney for Appellants Equitable Production Company and Equitable Resources, which I'll refer to together as EQT. This case started in 2006 with a class action litigation against EQT alleging breach of oil and gas lease agreements. It was settled in 2010 pursuant to a final settlement agreement that included representations and warranties of valid leases. In 2017, the Huey plaintiffs, the appellees, filed a state court action alleging that their lease was actually invalid at the time of the settlement and therefore EQT was trespassing in the ensuing years. And so the issue on appeal is whether the settlement agreement precludes that state court trespass claim. I'm having a little trouble understanding your argument. It's the purpose of the question to help me out. What's your argument that a trespass claim is a royalty claim? So the two answers to that, the first argument is that the Huey plaintiffs did not assert a standalone trespass claim. They asserted trespass within a royalty claim, the breach of the duty of good faith. That's the way they pled their claim. We could speculate as to why they did it, but that's what they did. So we think the trespass claim is a royalty claim, but really the more fundamental point is even if the trespass claim is not a royalty claim, it's in breach of the representations and warranties, which are not limited to royalty claims. And so that's a violation of the settlement agreement that we believe triggers the exceptions to the Anti-Injunction Act. So your contention is the trespass claim here is not a standalone claim? That's correct. In the complaint, the Huey plaintiffs alleged their trespass claim within a breach of the duty of good faith. And that's in their state court complaint. So that's why we don't think that what they've asserted is actually itself a royalty claim. But back to my previous point, the larger point that we are raising on appeal is that we believe that the trespass claim is in breach of the representations and warranties. And so that the two high level issues that we think have to be answered is first, whether the Huey plaintiffs are class members, and second, whether they're in breach of the representations and warranties triggering the exceptions to the Anti-Injunction Act. We think the district court decided both of those issues incorrectly. On the first issue, class membership, the settlement agreement is fairly straightforward here. There's three settlement subclasses. The flat rate subclass is defined as any person who entered into a flat rate lease with EQT or its predecessors and then actually received or was due to receive royalties. So there's the two-part definition. Either you actually received royalties or you were due to receive royalties. And there's no dispute that the Huey plaintiffs actually received royalties, so they fall within the subclass definition. The district court misapprehended this point because it accepted the Huey plaintiffs' argument that if they could convince a state court jury that their lease was invalid at the time of the settlement, that they would not be class members after all. But that ignores the subclass definition, which makes them class members on account of having actually received royalties. So that's the first assignment of error in the district court's opinion. And then as far as the exceptions to the Anti-Injunction Act, there's two exceptions that are applicable here, the inactive jurisdiction exception and the relitigation exception. Between the two of them, the inactive jurisdiction exception is the broader one. That applies to both pending claims and later filed claims. And the district court erred here because it interpreted the exception narrowly and said it only applies to pending claims. So the district court said because the federal action was already decided at the time that the state court action was filed, that the exception could not apply. But that's not the law. The inactive jurisdiction exception does apply to later filed claims. And in American Honda, which is the leading case on the inactive jurisdiction exception, this court upheld the applicability of the exception to later filed claims. So that's an additional assignment of error in the district court's opinion, this idea of a temporal limitation in the inactive jurisdiction exception. As to the home lease, which I think is in question, what do you do about the abandonment cessation clause? I take it the Huey plaintiff's claim is that that triggered the cessation of the lease. So I think the problem with their argument there is this is a flat rate lease. And so this kind of lease, as long as the flat rate royalty payments are made and there's no dispute that they were, there wouldn't be a cessation of the lease based on failure to pay royalties. And so I think that's the first thing, is the cessation clause doesn't come into play with this flat rate lease. And then the other issue is their argument kind of ignores the fact that they entered into this settlement agreement that attests to and effectively ratifies the validity of the lease as of the settlement date. And so for them to come now and say that seven years after the settlement that they think the lease is invalid, the time for them to make that argument was before they entered into the settlement with the representations and warranties that they held a valid lease as of the settlement date. So that would be our response to that issue. And that ties in with the other exception, the relitigation exception. That exception applies to the preclude claims that were either presented before or that are foreclosed by agreement. And we believe the representations and warranties of a valid lease as of the settlement date foreclosed by agreement, a later claim that the lease was invalid at the time of the settlement. I'm still a bit confused. I thought the settlement date was temporarily designated and the end of that period was December 8, 2008, and the entry they claim constitutes trespass was in 2013. Correct, but their trespass theory is predicated on an idea that the lease became invalid during the period covered by the representations and warranties. So they're not saying the lease became invalid in 2013. They say the lease became invalid in 1987 or in 2004 to 2005. Those are the two periods they point to for the invalidity of the lease. And those periods are covered by the settlement, which, as you mentioned, goes to 2008. So it would be one thing if they were saying the lease became invalid in 2013, but they're saying that the lease became invalid before they entered into the settlement that attests to the validity of the lease as of the settlement date. So that's the problem with their argument there. And the district court, it said that it didn't accept this argument because it said that the representations and warranties were not squarely presented. But we think that ignores what this court said in Keith v. Aldridge, which is that claims that are foreclosed by agreement are precluded regardless of whether they're formally presented. And in many respects, this case has a lot of similarities to Keith v. Aldridge, where there was a settlement of claims, and then subsequently the plaintiff tried to bring an additional claim and argued that it wasn't released. But this court said that it was foreclosed by agreement and therefore precluded under the relimitation exception. The primary argument that the E.B. plaintiffs have as far as why they say that they're not in breach of their representations and warranties is they say that they're not seeking termination. There's a representation against seeking termination. And they say that they're alleging that the lease terminated automatically, so they're not seeking termination. But as I've mentioned before, I think the problem with this argument for them is it ignores that they entered into this settlement agreement that, like I said, attested the validity of the lease as of 2008. And now they're coming back and saying that the lease was actually invalidated in 1987 or 2004 or 2005, both periods which are before the time that the settlement agreement covers. I think they also ignore the fact that there's multiple representations and warranties here. Even if they could get around this representation against seeking termination with their automatic termination theory, it wouldn't help them with the primary representation and warranty that they held a valid lease as of the settlement date. That representation would be breached regardless of how they characterize the supposed termination of their lease. And when we raised this argument both before the district court and this court, their response was that they believed in their representations and warranties at the time, but they changed their mind based on a subsequent investigation in 2017. And that argument doesn't make sense to us because these are representations and warranties of fact and law. They're not representations of belief. So you can't get out of them just by saying you believed them at the time, but now you've changed your mind. And in fact, under West Virginia law, which is the governing law of the settlement agreement, you cannot walk away from settled issues based on a subsequent investigation. That's the DeVane v. Kennedy case, and it incorporates the Davis case that we cite in our brief that talked about the importance of finality in respect to settlements. And they didn't say anything in response to that in their opposition. So we think at least on the briefing they've essentially conceded that issue. So just to sum up, the Huey plaintiffs are class members in breach of their representations and warranties. We think that triggers the exceptions to the Anti-Injunction Act and that this court should reverse the district court's decision with an instruction that the Huey plaintiffs are class members and that the state court action should be enjoined. And we've cited authority for this in our brief, the Resit case, which vacated the district court's denial of a motion to enforce a settlement agreement with instructions to apply the correct law. And also the Montgomery Ward case, 92 F. 3rd, 1180, reversed the district court and ordered it to enter an injunction under the exceptions to the Anti-Injunction Act where it failed to do so. So those were the primary points I wanted to cover. I'm happy to take any questions. But if there's no further questions, I'll sit down. Thank you, Mr. Honey. Thank you, Your Honor. Mr. Russell. Thank you, Your Honor. James Russell on behalf of Marcus Huey and 17 others that we're calling lovingly in this case the Huey plaintiffs. Your Honor, in 2017 our clients brought this claim in Wetzel County, West Virginia. And the argument has been kind of distorted a little bit in the briefing before this court. The argument on the trespass claim is that EQT failed to produce on a flat rate well. And by failing to produce on a flat rate well, which was later discovered by the plaintiffs, the habendum clause or the cessation clause was triggered. And this particular lease was then lost by EQT. And it was in 2013 and 2014 when they came on and drilled and committed the trespass. So we feel our trespass claim was timely in that regard. However, as far as the issue before this court, what we have said is that Judge Goodwin correctly analyzed the issue by looking at the fact that if the Huey plaintiffs knowingly made inaccurate representations or obtained some kind of settlement proceeds to which they were not entitled, the remedy was to seek repayment, not the extraordinary remedy of an injunction against this trespass claim, which he found centrally was not covered by the release and the settlement agreement and was not barred by his judgment order in 2010. And that's the central finding that Judge Goodwin made, which is being kind of ignored by EQT and its briefing before this court because that answers both exceptions to the Anti-Injunction Act. It answers the issue of the innate of jurisdiction exception because, as Judge Goodwin found, this is not a claim that is a royalty claim under the settlement agreement and is not a claim that was barred by his order on April 28, 2010. By making that finding, he is saying there is no threat to his jurisdiction here. And as far as the relitigation exception, of course, by making that finding, he is saying this is not an issue that was addressed, settled, or otherwise compromised in the K Company class action that was before him. So we believe they have essentially sidestepped this issue by ignoring his central finding in that regard. That finding is well-reasoned because, as he explains, the royalty claim definition in the settlement agreement, which was incorporated into his orders, went to the issue of what payments were made on royalty, the proper payments of royalty, and included that phrase at the end of the paragraph in describing all the claims that were being released and forever barred. And this trespass claim has nothing to do with payments of royalty. I would differ with my opponent here as far as what is allowable under West Virginia law in a trespass claim because, and I don't say this lightly, the judge in the case has already ruled on that issue. That was not before Judge Goodwin, unfortunately, but the judge in our case in Wetzel County has already ruled that these payment of flat rate royalty payments does not keep a lease going forever under West Virginia law, that the cessation clause still must be given effect and production still must be looked at. So to suggest that somehow that issue is alive and well for Judge Goodwin to look at, but ignore the fact that the state court in West Virginia has already decided that issue in this case. And so Judge Goodwin was correct in finding that this trespass claim was never contemplated, never looked at, and in fact the class counsel made a similar argument when they briefed the issue before Judge Goodwin, that this was not something that was contemplated or could have been contemplated because it's individualized to whether or not production on that lease continued for the periods of time indicated. The part of Judge Goodwin's opinion that EQT is called nonsensical is essentially a discussion of the alternative arguments being leveled by EQT. And what Judge Goodwin said was that if the jury in Wetzel County determines that in 1987 the production was not sufficient to sustain this lease, then the issue could be brought up by EQT that the Huey plaintiffs should not have been members of the class. Now that is something they could raise. They could raise in the federal court if they chose to. But then he also pointed out if it is 2004, 2005, that the jury determines that the production was not sufficient to sustain this lease, that is a more murky issue because as EQT has said, there are representations and warrants within the class settlement process in this case. However, the representation and warrants do not say, and that's the issue that Judge Goodwin said was not squarely presented, those representations and warrants do not say that I am warranting that I have a valid lease on the date of settlement. They say I am warranting that I am an owner of a covered lease and entitled to payments. This time period that was covered by the lease, by the settlement, was 2001 to 2008. There are various points in that time period that some people would be entitled to payments, some people would not be entitled to payments, some people would be an owner for a period of time, some people would not be an owner for a period of time. There is no warrant, however, in the settlement agreement that the person who has filled out the claim form is warranting that on 2008 when I sign this form, I am warranting that I have a valid lease on that date. And that's what they've represented to this court on the briefing. That's what Judge Goodwin was correct in saying was not squarely presented to Envelope. That argument is not consonant with the actual warrants and representations in the agreement itself. But his central finding is really the answer to both exceptions and that he is finding that this is not a royalty claim. It's a common law trespass claim. Counsel today suggests that it was pled under the breach of duty of good faith and fair dealing or inconsolability. Therefore, it's somehow a contract claim and therefore a royalty claim. What's the basis for your damages in the trespass claim? The basis for damages would be the idea that the 2013-2014 drilling of our client's property would have been an unlawful taking of their property. So it would be the value of those resources taken in 2013-2014 and going forward. Which would be sort of based on a metric of royalties, wouldn't it? Loss of royalties? Actually, loss of value, Your Honor. But how is that value calculated? Does the loss of royalties factor into the value? Actually, it's valued on the basis of the price received for the gas and the market value of the gas. Under West Virginia law, if the trespass is intentional, the party who has trespassed owes the owner, the innocent owner, they owe them the full value of that without regard to their cost in drilling and producing the gas at the market value of the gas taken. If it's an innocent trespass or a non-intentional trespass, they can discount that value for the cost it took to drill and access the gas itself. But that's the basis for the damages. So the damages won't even start and don't start if our trespass is found to be true. It doesn't start until they actually entered in 2014 and started extracting gas. So when the cessation clause was triggered, the trespass was after that? Correct, Your Honor. And then you could have acted on then, right? Correct. As owner? Yes, as the owner. Our trespass claim wouldn't even come spring up until they actually entered and drilled in 2014. They produced in 2014. They started drilling in late 2013. So the cessation alone does not trigger any rights of yours because of the flat rate nature of that? Correct. Yes, the cessation clause only determines whether or not they're innocent, intentional, or otherwise. Our ownership of those minerals has been proven throughout. It depends upon our ownership of the mineral estate, not the actual cessation clause. I did want to address what Judge Floyd had asked about, which is this idea that somehow this trespass claim would fit under a royalty claim. They cite to our complaint in that case in which we plead it, and it's pled under a topical heading that is the unconscionability and good faith and fair dealing topical heading. But in West Virginia, we're a notice pleading state. We don't determine that something is standalone or not standalone by the labeling of a topical heading in the complaint. Our actual allegations are found on page 278 of the joint appendix, paragraph 91 of the complaint, as well as page 269 of the joint appendix, paragraphs 34 through 36. If you look at those allegations, the allegation is not that there was some breach of good faith and fair dealing that triggered this trespass. It is that there's a failure to produce, and that there was a failure to produce, and that they failed to continue operations under the lease. And then in paragraph 91, what we actually plead is that it's a violation of West Virginia's code and the common law of West Virginia on trespass. And so that, we believe, defines this as a standalone. And the state court in West Virginia has made that finding, that it is a standalone claim. So we believe that that representation ignores the actual wording of our claim and the actual pleadings in our case. So I did want to respond to that. But in essence, what we're saying is Judge Goodwin was correct in looking at the idea of, is this a claim that is covered by the settlement agreement? Is this a claim that is covered by his final judgment order barring future claims? And answer that in the negative. And then he went into a discussion of, okay, these are the other arguments that EQT makes, which he found were not squarely presented, but he went into that discussion. And what is overarching in his opinion is the idea that he exercised his discretion appropriately. He looked at the idea of, what is my interpretation of the settlement agreement that I retain jurisdiction over and my order that I retain jurisdiction over? He interpreted that. He interpreted it correctly. And we believe, in that regard, he exercised his discretion appropriately under the standards set by this court. As a follow-up to Chief Judge Grady's question about damages, I take it that under an intentional trespass that the amount of damages would be much greater than any royalty claim. It would, Your Honor, because in essence, even if somebody, well, in practical terms, when somebody comes in and drills and then starts paying the royalty, and this is rough, but you're talking about one-eighth and seven-eighths. You're talking about a portion of the value is supposed to be paid as a royalty to the owner, and a portion of the value is kept by the producer as their revenue and their profit margin. In a trespass, intentional trespass claim, what the court in West Virginia said is, we disgorge that. We don't let somebody profit from their intentional misconduct. So that seven-eighths that they were keeping, that's all the owner's. Every bit of the value belongs to the owner of that mineral, because they weren't entitled to take it in the first place. Any questions? I don't want to repeat what's already fully briefed in the briefs to this court, but I'd be happy to answer any further questions. Thank you, Mr. Mahoney. Mr. Russell, you have some time reserved. Yes, I'd just like to address a few points, Your Honors. The first is that my opposing counsel said that the cessation clause must be given effect because the state court has decided that issue. But we don't agree with that at all, because the state court, to the extent it did decide that issue, ignored what this court said in Wellman, which is that when you have a flat-rate lease, the fact that there has been any cessation of production does not terminate the lease, because the flat-rate payments have been made. There's no dispute here that the flat-rate payments have been made. That's enough to hold the lease. So that's one point, as we think the Wellman case is controlling there. The second point is as to the question of whether trespass is a royalty claim. Again, we think it is a royalty claim, but even if it's not, it's precluded by the representations and warranties, which are independent of the release of royalty claims. And if we go to JA-102, JA-102 is where we have all of the representations and warranties. The release of royalty claims is at the first full paragraph on JA-102. The representations and warrants are in the second full paragraph. These are independent provisions. They're not linked to each other. If you were to read the representations and warranties as being subsumed within the release of royalty claims, it would render that provision totally superfluous, which is that's not how we can interpret the contract. They have to be in there to do something, and the only way to give them meaning is the interpretation that we're arguing here. And on that point, actually, in American Honda, the claim that was precluded there was not a released claim. That case had an underlying class-action settlement of RICO claims against Honda, and then you had this collateral claim that one of the class members had against their lawyer for malpractice, and that ended up being precluded under the inactive jurisdiction exception because it interfered with the settlement by requiring an interpretation of the settlement. So that was not a released claim, but it still triggered the inactive jurisdiction exception. Here, we believe that the Huey plaintiff's state court trespass claim interferes with the settlement by breaching the representations and warranties, so applying American Honda, the exception should be triggered for the same reason. It's actually very similar to the Imperialist herbicide case that we cite in our brief, where there was a settlement of products liability claims, and then one of the class members brought a state court claim in West Virginia for fraud, and just as the Huey plaintiffs are doing here, they said that this is our independent fraud claim, and it's not released by the settlement. We should be allowed to proceed with it, and the court said no. This claim, whether it's released or not, it implicates the settlement agreement, so it's precluded, and that same reasoning applies here. And staying on JA-102, I think it also should be noted that if we go to the bottom of JA-102, the third full paragraph, the last sentence, there is a reservation of claims here. It says, flat-rate subclass members who join the class settlement retain their rights to bring an action for conversion of their lease in the future. So they did reserve some claims. They had the right to convert their flat-rate lease into a volumetric one-eighth royalty lease. They did not retain the right to say that their lease was invalid at the time of the settlement, and that's important because in Keith v. Aldridge, there was a very similar situation where this court said you retain some rights to bring future claims. You didn't retain the right to bring the claim at issue, so that claim is precluded. My opposing counsel also said that there's no representation that the class member has held a valid lease as of the settlement date. If we look at the representation at the second full paragraph, I'll just read it because it's short. As consideration for this settlement, the undersigned class member represents and warrants that he or she is the owner of the interest in the lease reflected in the claim form. That's a different thing. In JA-101, where you're reciting, they never say that they're warranting that the lease is valid. They're only warranting that they're an owner. Isn't that what it says there? Yes, Your Honor, but I don't think you can hold an interest in an invalid lease. I think if you have an interest, it must be a valid lease. This is reflected in JA-101 at the bottom where it said it warrants the subclass member's ownership period in the covered lease. I think if you're warranting that you have an ownership in a lease, it must be a valid lease. If the lease became invalid, you would no longer have ownership in that lease. That's not what they're saying. They're just not warranting that it's valid. They may have a valid lease, but they're not warranting that. Isn't that what that means? To me, if you're warranting that you hold an ownership interest in a lease, as part of that, you're warranting that you have a valid lease, because I don't think you can have an ownership interest in something that's invalid. The last point I wanted to point out briefly, I see I'm just out of time here, but my opposing counsel said that there was a repayment provision that Judge Goodwin found. There is no repayment provision. There's an indemnification provision. That's in the second full paragraph on JA-102. That contemplates a situation where there's a dispute among adverse lessors over who's entitled to a settlement payment, but that's not the situation where a lessor comes in and says that their lease is invalid and they're not a class member to begin with. I see I'm out of time, so unless there's further questions, I'll stop there. Thank you, counsel. As a matter of fact, thank you both for your arguments. We would love to come down and shake hands in our normal tradition, but under the circumstances, we cannot. But, no, nonetheless, we appreciate your being here and your arguments, and we wish you well. Be safe, and thank you so much.
judges: Roger L. Gregory, Henry F. Floyd, William B. Traxler Jr.